UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANGIE SERRANO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 16-15460 |
| OTIS ELEVATOR COMPANY, ET AL. | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is plaintiffs Angie Serrano and Nelly Briceno's motion to remand this case to state court.[1] For the following reasons, plaintiffs' motion to remand is denied.

## I.   BACKGROUND

On April 3, 2016, plaintiffs Angie Serrano and Nelly Briceno were injured at the Westin New Orleans Canal Place hotel when the service elevator in which they were riding malfunctioned and dropped multiple floors. At the time, plaintiffs were employees of Staff Pro Workforce, LLC, which was under contract to provide contract workers to the hotel.[2] According to plaintiffs, the drop was forceful enough that Briceno broke her

---

[1]   R. Doc. 7.
[2]   R. Doc. 1-1 at 2 ¶ 2.

leg and a vertebrae in her back, and Serrano was thrown to the ground where she struck her head.[3]

On August 19, 2016, plaintiffs filed suit in the Civil District Court for the Parish of Orleans. Plaintiffs named as defendants the Otis Elevator Company, Interstate Management Company, LLC (the entity that provided hotel management services for the hotel), Canal Place Borrower, LLC (the owner of the hotel, d/b/a The Westin New Orleans Canal Place), and Dacia Paz.[4] Paz was plaintiffs' supervisor at the time of their injuries, and plaintiffs alleged that they notified Paz of similar incidents of elevator malfunctions before they were injured.[5] Plaintiffs' suit alleged that defendants' negligence was the cause of the elevator accident and their injuries.[6] On October 12, 2016, defendants Canal Place and Interstate removed the case to this Court on the basis of diversity jurisdiction.[7]

Plaintiffs now move to remand, contending that incomplete diversity of the parties renders this Court without subject matter jurisdiction. Indeed, it is undisputed that Serrano and Briceno, along with defendant Paz are Louisiana citizens for jurisdictional purposes. Removing defendants Canal

---

[3] *Id.* ¶ 3.
[4] *Id.* at 1-2.
[5] *Id.* at 3 ¶ 5.
[6] *Id.* at 3-4.
[7] R. Doc. 1.

Place and Interstate argue that complete diversity exists because Paz was improperly joined and therefore her citizenship should be ignored.[8]

## II.  REMAND BASED ON LACKING DIVERSITY JURISDICTION

### A.  Improper Joinder Standard

Plaintiffs' remand motion is governed by the standard for improper joinder, as set forth below.

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, No. 95-668, 1995 WL 419901, at *4 (E.D. La. July 13, 1995). Though the Court must remand to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is

---

[8] R. Doc. 9 at 1-2.

fixed at of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, the parties do not dispute that the amount-in-controversy-requirement is met, but they disagree about whether the complete diversity requirement is satisfied. Indeed, Serrano, Briceno, and Paz have Louisiana citizenship, which would ordinarily destroy complete diversity. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). And when a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332. But a defendant may remove by showing that the nondiverse party was joined improperly. *Smallwood v. Ill. Cent. R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003) (*Smallwood I*).

The burden of demonstrating improper joinder is a heavy one, as the doctrine is a narrow exception to the rule of complete diversity. *Id.* A defendant may establish improper joinder by showing either (1) actual fraud in pleading jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant. The test for fraudulent

4

joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*Smallwood II*). The possibility must be reasonable, not merely theoretical. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may "'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Menedez v. Wal-Mart Stores, Inc.*, 364 Fed. App'x 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood II*, 385 F.3d at 573).

The scope of the inquiry for improper joinder, however, is even broader than that for Rule 12(b)(6) because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Smallwood I*, 352 F.3d at 223 n.8 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)). *See also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In

5

conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. So, too, must the Court resolve all ambiguities of state law in favor of the nonremoving party. *Id.* Further, the Court must take care not to "mov[e] beyond jurisdiction and into a resolution on the merits." *Smallwood II*, 385 F.3d at 574.

## III.   DISCUSSION

Defendants argue that plaintiffs' joinder of Paz was improper because, according to defendants, Paz has tort immunity under the Louisiana Workers' Compensation Act (LWCA), La. Stat. Ann. § 23:1032, *et seq.*, and therefore there is no reasonable basis for the Court to find that plaintiffs can recover against the in-state defendant Paz. Defendants do not contest that a 12(b)(6)-type inquiry would reveal a reasonable basis for recovery, but instead ask the Court to "pierce" plaintiff's pleadings and conduct a summary inquiry to determine Paz's tort immunity under the LWCA. *Smallwood II*, 385 F.3d at 573.

### A.   Louisiana Workers' Compensation Act

The LWCA provides the exclusive remedy for an employee injured by the negligent acts of his or her co-employees or employer when those injuries

arise out of and in the course of employment. *See* La. Stat. Ann. §§ 23:1031 and 23:1032; *Vallery v. Southern Baptist Hosp.*, 630 So. 2d 861, 863 (La. App. 4 Cir. 1995); *Chafflin v. John H. Carter Co., Inc.*, No. 96-2127, 1998 WL 19624, at *7 (E.D. La. Jan. 20, 1998). Therefore, the LWCA provides a statutory defense to tort claims from employees injured on the job.

The LWCA covers direct employers and employees, but also includes the concept of "statutory employer." This is meant to ensure that injured contracted employees have an effective remedy by making it more difficult for an entity to avoid workers' compensation liability by operating through intermediaries. *See Berthelot v. Murphy Oil, Inc.*, No. 09-4460, 2010 WL 103871, at *3 (discussing history of LWCA). But the "statutory employer" concept also operates as a defense to tort actions for employers who use contracted employees. The Act includes two types of statutory employer defenses, the "trade, business or occupation" defense, and the "two-contract" defense. La. Stat. Ann. § 23:1061(A)(1). Defendants rely on the "two-contract" defense here.

The "two-contract" theory creates a statutory employer relationship between a general contractor and the employees of its subcontractors, regardless of the general contractor's trade or business. *See Allen v. State ex rel. Ernest N. Moral-New Orleans Exhibition Hall Auth.*, 842 So. 2d 373,

378 (La. 2003). The "two-contract" defense applies when: "(1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed." *Id.* With this defense, it is "irrelevant whether the subcontractor's work is part of the work ordinarily performed by the principal." *Id.* at 379. Thus, under the "two-contract" defense, an employer is immune from liability for tort claims from subcontracted employees.

### B. Summary Inquiry

"Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood II*, 385 F.3d at 573. Even so, district courts may "pierce the pleadings and conduct a summary inquiry" before slamming the door on a claim of improper joinder. *Id.* In cases in which a plaintiff has "stated a claim but misstated or omitted discrete facts that would determine the propriety of joinder," a summary inquiry might be useful. *Id.* Importantly, the summary inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.*

Plaintiffs argue that the inquiry sought by defendants under the LWCA and the "two-contract" defense would exceed the bounds set out in *Smallwod II*. But Courts in this Circuit have addressed the issue of LWCA immunity—including whether an injured plaintiff was in the course and scope of his or her employment, and the "two-contract" argument urged here—in the context of motions to remand for improper joinder. *See Collins v. Brice Bldg. Co., LLC*, No. 12-2319, 2012 WL 6049149, at *3-5 (E.D. La. Dec. 5, 2012)[9]; *Lebeau v. Marathon E.G. Production Ltd.*, No. 11-0841, 2011 WL 5920950, at *6 (S.D. Tex. Nov. 28, 2011) (finding improper joinder because of LWCA immunity and rejecting argument that inquiry exceeded scope of *Smallwood II*); *see also Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100-01 (5th Cir. 1990) (affirming determination that nondiverse party was improperly joined because party was entitled to LWCA immunity); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993) (same); *Keating v. Shell Chem. Co.*, 610 F.2d 328, 333 (5th Cir. 1980) (instructing district court to determine if accident occurred while plaintiff was in course and scope of his employment before deciding question of improper joinder).

---

[9] *Collins* considered a motion for summary judgment together with the motion to remand, but addressed the question of improper joinder before addressing summary judgment.

Plaintiffs do not address these cases. Additionally, in arguing that the inquiry sought exceeds *Smallwood II*, plaintiffs rely on cases that involve immunity regimes or other defenses that have no application here. *See Cason v. Chesapeake Operating, Inc*, No. 10-1443, 2011 WL 201203, at *1-4 (W.D. La. Jan 18, 2011); *Catalano v. Cleggett-Lucas*, No. 02-330, 2002 WL 506810, at *2-3 (E.D. La. Mar. 28, 2002). The sole case cited by plaintiffs concerning the LWCA deals with intentional torts, which are specifically exempt from the LWCA. *See Ohler v. Mobil Oil Corp.*, No. 91-4192, 1992 WL 28062, at *1 (E.D. La. Feb. 5, 1992).

In *Cason*, the court found that the inquiry necessary to determine if a party was entitled to Louisiana law contractor's immunity would go "far beyond the summary inquiry envisioned by the Fifth Circuit in *Smallwood* and goes directly to the merits of the case." 2011 WL 201203, at *4 (citations and internal quotation marks omitted). But *Cason* dealt with contractor's immunity under Louisiana law, La. Stat. Ann. § 9:2771, instead of immunity under the LWCA. The statutory requirements for each immunity are different, and the inquiry required in *Cason* is much more expansive than is required here. The same is true of *Catalano v. Cleggett-Lucas*, cited by

10

plaintiffs.¹⁰  No. 02-330, 2002 WL 506810, at *2-3 (E.D. La. Mar. 28, 2002) (finding that affirmative defense of prescription did not bar remand because to determine its applicability the Court must determine the date of plaintiff's addiction to OxyContin, which was unlikely to have clear-cut onset date).  *See also Conner v. Kraemer-Shows Oilfield Servs., LLC*, 876 F. Supp. 2d 750, 755 (refusing to pierce pleadings because both parties had submitted multiple affidavits and "dueling interpretations of medical records," and "almost all of the material facts" were disputed).

Plaintiffs also point to the case of *Ohler v. Mobil Oil Corporation* to argue that the question of LWCA tort immunity should not be determined at this stage.  In *Ohler*, an employee of Mobil was injured in an explosion at one of Mobil's refineries.  Mobil removed and the plaintiff moved to remand, and the defendants similarly argued that the nondiverse defendants were improperly joined because they were immune from suit under the LWCA.  *Ohler*, No. 91-4192, 1992 WL 28062, at *1 (E.D. La. Feb. 5, 1992).  The Court found that there was a reasonable basis for liability and granted plaintiff's

---

¹⁰   Plaintiffs also cite *Cooper v. Brown & Williamson Tobacco Corp.*, No. 00-2539, 2001 WL 1677049 (E.D. La. Apr. 12, 2001).  But while *Cooper* rejected defendants' improper joinder argument based on an affirmative defense, the *Cooper* court made clear that made its decision largely because the first time defendants mentioned any possible affirmative defenses was well after the case was initiated and that defendants had not even pleaded the existence of an affirmative defense. *Id.* at *1-2.

11

remand motion. *Id.* at *2. But the *Ohler* Court relied on the fact that the plaintiff asserted a claim of intentional tort, and claims for intentional torts are exempt from the LWCA. *Id.* at *1-2. Therefore the Court could not determine if the nondiverse defendants were improperly joined without examining if they committed an intentional tort, which would impermissibly go to the merits of plaintiff's claim. Plaintiffs here allege solely negligence, and therefore *Ohler* is inapposite.

An examination of the inquiry necessary here reveals that it is appropriate under *Smallwood II*. To determine if Paz is entitled to immunity under the LWCA, the Court must determine (1) if plaintiffs were injured in the course and scope of their employment; and (2) if Paz is a statutory employee of plaintiff's statutory employer. These facts can be determined without substantial evidentiary analysis or hearings. Thus, the Court finds that determining the application of tort immunity from the LWCA does not exceed the scope of the *Smallwood* inquiry, nor impermissibly enmesh the Court in the merits of plaintiffs' case. *Smallwood II*, 385 F.3d at 574, 574 n.12 (citation omitted); *cf. Pitman v. Crane Co.*, No. 13-83, 2013 WL 1403326, at *5 (E.D. La. Apr. 5, 2013) (after "piercing the pleadings," finding defendant had not met burden to show improper joinder because defendant

could not show plaintiff had no reasonable basis for recovery without getting into merits of claim).

### 1. *Course and Scope of Employment*

Plaintiffs argue that their injuries occurred after they completed their shifts, so they were no longer on duty and thus the LWCA should not apply.[11] For an injury to be covered by the LWCA, the injury must both "arise out of" and "occur in the course of" employment. *Harris v. Wal-Mart Stores, Inc.*, 205 F.3d 847, 848 (5th Cir. 2000). "The arising out of prong focuses on the character or source of the risk and on the relationship of the risk to the nature of employment," while the "course of employment" prong examines time, place, and employment activity. *Id.* (internal quotation marks omitted). A strong showing on one prong will compensate for a weaker showing in the other, and *vice versa*. *Id.* The Fifth Circuit has observed that Louisiana courts liberally construe the LWCA "so as to include all services that can reasonably be said to be within the statute not only when the injured person seeks its protection, but when he attempts to have himself excluded from the coverage of the act." *Id.* at 849 (citation omitted).

---

[11] R. Doc. 7-2 at 6-7.

13

According to plaintiffs' own allegations, the injury occurred in the hotel's service elevator, on the hotel premises,[12] and plaintiffs' motion to remand states that the accident occurred shortly after they finished their shifts.[13] Further, defendant submits the affidavit of David Bilbe, the General Manager of the hotel, who attests that when the accident occurred, plaintiffs had not yet clocked out, nor had they turned in their assignments, a requirement before one can finish his or her shift.[14] Additionally, Bilbe attests that plaintiffs were still in their housekeeping uniforms when the accident occurred.[15] Plaintiffs submit no evidence in response to Bilbe's affidavit and point to nothing indicating Bilbe's attestations are false, beyond calling the affidavit "self-serving."[16]

Even if the Court were to take plaintiffs' contested allegation that they were off-duty as true, the LWCA would still apply. Louisiana courts consistently hold that employees are covered by the Act when they are injured on their employer's premises, even if they have completed their shifts. *See, e.g.*, *Sislo v. New Orleans Center for Creative Arts*, 198 So. 2d

---

[12] R. Doc. 1-1 at 1.
[13] R. Doc. 7-2 at 6 ("*Just before* entering the service elevator in question, Plaintiffs had cleaned their last rooms and completed their shift.") (emphasis added).
[14] R. Doc. 9-1 at 2 ¶ 8.
[15] *Id.*
[16] R. Doc. 12 at 3.

1202, 1208 (La. App. 4 Cir. 2016) (noting that it has "long been well settled, . . . that [the LWCA] envision[s] extension of coverage to employees from the time they reach the employer's premises until they depart therefrom") (quoting *Carter v. Lanzetta*, 193 So. 2d 259, 261 (La. 1966)); *Mitchell v. Brookshire Grocery Co.*, 653 So. 2d 202, 204 (La. App. 2 Cir. 1995) ("Even if an employee has finished his day's work and is in the act of leaving, he is entitled to a reasonable period while still on the employer's premises which is regarded as within the course of employment."); *Bosse v. Westinghouse Electric, Inc.*, 637 So. 2d 1157, 1159-60 (La. App. 4 Cir. 1994) (finding that injuries sustained in elevator accident which occurred approximately 45 minutes before plaintiff's shift started were covered by LWCA); *see also Harris*, 205 F.3d at 851 (finding that injury to off-the-clock employee caused by physical defect in employer's premises covered by LWCA).

Plaintiffs cite no case stating that the course and scope of one's employment ends at the exact moment his or her shift ends. As the above authority makes clear, there is no merit to plaintiff's argument that their injuries were not in the course and scope of their employment.

### 2.    Two-Contract Defense

Next, the Court must address whether Paz has tort immunity under the LWCA pursuant to the "two-contract" defense. In support, defendants

15

submit a Hotel Management Agreement between Patriot Mortgage Borrower, L.L.C., and Interstate, in which Interstate agreed to operate the hotel.[17] Patriot owned the hotel before Canal Place, and assigned its rights and duties under the Agreement to Canal Place.[18] Defendants also submit an Agreement for the Supply of Contract Labor between Interstate (as agent for Canal Place) and Staff Pro Workforce.[19] Bilbe's affidavit attests that Interstate entered into the contract with Staff Pro in order to fulfill its obligations to operate the hotel.[20]

All of the elements of the two-contract defense are met here. Canal Place had a contract with Interstate, and under that contract, Interstate had to perform the work necessary to operate the hotel. In order to do so, Interstate entered into a subcontract with Staff Pro, in which Staff Pro (and its employees) agreed to perform part of the work. This is a clear example of statutory employment under the two-contract defense. *See Collins*, 2012 WL 6049149, at *4; *Groover v. Scottsdale Ins. Co.*, 586 F.3d 1012, 1015 (5th Cir. 2009). Plaintiffs admit in their complaint that they were employees of Staff Pro at the time of the accident.[21] Thus, as plaintiffs make no argument and

---

[17] R. Doc. 9-1 at 4.
[18] *Id.* at 10.
[19] *Id.* at 12.
[20] *Id.* at 2 ¶ 4.
[21] R. Doc. 1-1 at 2 ¶ 2.

16

submit no evidence to the contrary, there is no dispute that Interstate is the statutory employer of plaintiffs.

It is well settled that employees of statutory employers are also immune from tort liability as statutory co-employees. *See Collins*, 2012 WL 6049149, at *5 ("[C]ourts have repeatedly held that statutory co-employees are provided tort immunity.") (citing *Dean v. Baker Hughes, Inc.*, No. 10-385, 2010 WL 5463422, at *4 (W.D. La. Dec. 29, 2010); *Calais v. Exxon Pipeline Co.,* 430 So. 2d 321, 324 (La. App. 3 Cir. 1983)). Plaintiffs allege that Ms. Paz's employment status has not yet been established, but Bilbe's affidavit attests that Paz was a W-2 payroll employee of Interstate at the time of the accident.[22] Paz's employment status can easily be determined without substantial evidentiary analysis. Plaintiffs "dispute" Paz's status as an employee of Interstate but offer nothing whatsoever in evidence to put her employment status in dispute. Bilbe's affidavit attests, based on his knowledge as General Manager of the hotel, that Paz is an employee of Interstate, and there is no evidence in the record indicating otherwise. Therefore, Paz's status as an employee of Interstate is not disputed. Because Interstate is plaintiffs' statutory employer, and because Paz is an employee of Interstate, Paz is also entitled to immunity as a statutory co-employee.

---

[22] R. Doc. 9-1 at 2 ¶ 7.

17

*See, e.g., Collins*, 2012 WL 6049149, at *5. Therefore, plaintiffs do not have a reasonable basis for recovery against the nondiverse defendant Paz.

Because plaintiffs lack a reasonable basis for recovery against Paz, defendants have met their heavy burden in establishing that Paz was improperly joined. Accordingly, diversity jurisdiction exists, and plaintiffs' motion to remand must be denied.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is DENIED. Defendant Dacia Paz is DISMISSED as improperly joined.

New Orleans, Louisiana, this __6th__ day of February, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE