UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ANGIE SERRANO, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-15460 |
| OTIS ELEVATOR COMPANY, ET AL. | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is defendant Interstate Management Company, LLC's motion for summary judgment on plaintiffs Angie Serrano and Nelly Briceno's claims.[1] Because there is no genuine issue of material fact as to Interstate's immunity for plaintiffs' claims under the Louisiana Workers' Compensation Act, the Court grants defendant's motion.

## I. BACKGROUND

The following factual allegations from plaintiffs' complaint are not disputed. On April 3, 2016, plaintiffs Angie Serrano and Nelly Briceno were injured at the Westin New Orleans Canal Place hotel when the service elevator in which they were riding malfunctioned and dropped multiple floors.[2] At the time, plaintiffs were employees of Staff Pro Workforce, LLC,

---

[1] R. Doc. 26.
[2] R. Doc. 1-1 at 2 ¶¶ 2, 3.

which was under contract to provide workers for the hotel to perform hotel operations.[3]  According to plaintiffs, the drop was forceful enough that Briceno broke her leg and a vertebrae in her back, and Serrano was thrown to the ground where she struck her head.[4]

On August 19, 2016, plaintiffs filed suit in the Civil District Court for the Parish of Orleans.  Plaintiffs named as defendants the Otis Elevator Company, Interstate Management Company, LLC (the entity that provided hotel management services for the hotel), Canal Place Borrower, LLC (the owner of the hotel, d/b/a The Westin New Orleans Canal Place), and Dacia Paz.[5]  Paz was plaintiffs' supervisor at the time of their injuries, and plaintiffs alleged that they notified Paz of similar incidents of elevator malfunctions before they were injured.[6]  Plaintiffs' suit alleged that defendants' negligence was the cause of the elevator accident and their injuries.[7]  On October 12, 2016, defendants Canal Place and Interstate removed the case to this Court on the basis of diversity jurisdiction.[8]

---

[3]     *Id.* at 2 ¶ 2.
[4]     *Id.* ¶ 3.
[5]     *Id.* at 1-2.
[6]     *Id.* at 3 ¶ 5.
[7]     *Id.* at 3-4.
[8]     R. Doc. 1.

On November 9, 2016, plaintiffs moved to remand, arguing that the defendants were not completely diverse.[9] On February 6, 2017, the Court denied plaintiffs' motion to remand, finding that defendant Dacia Paz was improperly joined and, therefore, complete diversity did exist.[10] In making this determination, the Court rejected plaintiffs' argument that their injuries did not occur in the course and scope of their employment, and found that Paz was an employee of plaintiffs' statutory employer, Interstate, making Paz immune from tort liability under the Louisiana Workers' Compensation Act (LWCA), La. Stat. Ann. § 23:1032, *et seq.*[11]

Interstate now moves for summary judgment, arguing that there is no dispute of material fact as to Interstate's immunity for plaintiffs' claims.[12] Plaintiffs filed a response in opposition,[13] and alternatively moved the Court to delay or defer consideration of Interstate's motion so that plaintiffs can obtain additional discovery.[14] The Court granted plaintiffs' motion for additional discovery in part, ordering Interstate to submit the full copy of the Hotel Management Agreement between Canal Place (through its predecessor

---

[9] R. Doc. 7-2 at 3.
[10] R. Doc. 19.
[11] *Id.* at 13-17.
[12] R. Doc. 26-1 at 2-4.
[13] R. Doc. 32.
[14] *Id.* at 4-5.

in ownership of the hotel) and Interstate.[15] After Interstate submitted the contract in compliance with the Court's order,[16] plaintiffs filed supplemental briefing,[17] and Interstate replied.[18]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth

---

[15] R. Doc. 44 at 3. The Court denied plaintiffs' request for additional time to depose unidentified fact witnesses regarding whether plaintiffs were injured in the course and scope of their employment because plaintiffs did not explain what information these unidentified witnesses may have that plaintiffs themselves did not, or how this information would create an issue of material fact. *Id.* at 3-5.
[16] R. Doc. 50.
[17] R. Doc. 51.
[18] R. Doc. 53.

'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must,

by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

### A. Louisiana Workers' Compensation Act

The LWCA provides the exclusive remedy for an employee injured by the negligent acts of his or her co-employees or employer when those injuries arise out of and in the course of employment. *See* La. Stat. Ann. §§ 23:1031 and 23:1032; *Vallery v. Southern Baptist Hosp.*, 630 So. 2d 861, 863 (La. App. 4 Cir. 1995); *Chafflin v. John H. Carter Co., Inc.*, No. 96-2127, 1998 WL 19624, at *7 (E.D. La. Jan. 20, 1998). Therefore, the LWCA provides a statutory defense to tort claims from employees injured on the job.

The LWCA covers direct employers and employees, but also includes "statutory employers." Coverage of statutory employees is meant to ensure

that injured contracted employees have an effective remedy by making it more difficult for an entity to avoid workers' compensation liability by operating through intermediaries. *See Berthelot v. Murphy Oil, Inc.*, No. 09-4460, 2010 WL 103871, at *3 (discussing history of LWCA). But the "statutory employer" concept also operates as a defense to tort actions for employers who use contracted employees. The Act includes two types of statutory employer defenses, the "trade, business or occupation" defense, and the "two-contract" defense. La. Stat. Ann. § 23:1061(A)(1).[19]

The "two-contract" theory creates a statutory employer relationship between a general contractor and the employees of its subcontractors, regardless of the general contractor's trade or business. *See Allen v. State ex rel. Ernest N. Moral-New Orleans Exhibition Hall Auth.*, 842 So. 2d 373, 378 (La. 2003). The "two-contract" defense applies when: "(1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed." *Id.* at 379. With this defense, it is "irrelevant whether the subcontractor's work is part of the work ordinarily performed

---

[19] The "trade, business or occupation" defense is not relevant to this case.

by the principal." *Id.* at 378-79. Thus, under the "two-contract" defense, an employer is immune from liability for tort claims from subcontracted employees.

Interstate relies on the two-contract defense in asserting immunity under the LWCA.[20] In doing so, Interstate submits the Hotel Management Agreement between Patriot Mortgage Borrower, L.L.C., and Interstate, in which Interstate agreed to operate the hotel.[21] Patriot owned the hotel before Canal Place, and assigned its rights and duties under the Agreement to Canal Place.[22] Defendants also submit an Agreement for the Supply of Contract Labor between Interstate (as agent for Canal Place) and Staff Pro Workforce.[23] Finally, Interstate submits the affidavit of David Bilbe, the General Manager of the hotel. Bilbe attests that the copies of the Hotel Management Agreement and the Supply of Contract Labor Agreement are true and correct, that housekeeping was a service provided by Interstate for the operation of the hotel, that Interstate entered into the contract with Staff Pro in order to fulfill its obligations to operate the hotel, and that plaintiffs

---

[20] R. Doc. 26-1 at 3.
[21] R. Doc. 9-1 at 4; *see also* R. Doc. 50-1.
[22] R. Doc. 9-1 at 10.
[23] *Id.* at 12.

were payroll employees of Staff Pro as housekeepers at the time of their injuries.[24]

For the same reasons that the Court found the two-contract defense applicable in rejecting plaintiffs' motion to remand, the two-contract defense applies here. Canal Place had a contract with Interstate, and under that contract, Interstate had to perform the work necessary to operate the hotel. Specifically, the contract states that Interstate would supply, as operator, "other services . . . as are customarily performed by management companies of first-class, full-service hotels or are necessary for the day-to-day operation, management, and supervision of the Hotel."[25] In order to do so, Interstate entered into a subcontract with Staff Pro, in which Staff Pro agreed to perform part of the work. This is a clear example of statutory employment under the two-contract defense. *See, e.g., Collins v. Brice Bldg. Co., LLC*, No. 12-2319, 2012 WL 6049149, at *4 (E.D. La. Dec. 5, 2012); *Groover v. Scottsdale Ins. Co.*, 586 F.3d 1012, 1015 (5th Cir. 2009). Plaintiffs concede that they were employees of Staff Pro at the time of their accident.[26] Thus, there is no dispute of material fact that Interstate is the statutory employer

---

[24] *Id.* at 1-2 ¶¶ 3-6.
[25] *Id.* at 8 ¶ 3.1L; *see also id.* at 9 ¶ 4.2.
[26] R. Doc. 1-1 at 2 ¶ 2; R. Doc. 32 at 11 (stating "Staff Pro employees, such as plaintiffs . . .").

of plaintiffs, and thus there is no dispute that Interstate is entitled to immunity under the LWCA.

Plaintiffs attempt to resist this conclusion in three ways. First, they argue that Interstate cannot prevail on its two-contract defense because the Hotel Management Agreement is ambiguous. Second, plaintiffs argue that Interstate's contract with Staff Pro is invalid under Louisiana law. According to plaintiffs, both arguments require denial of summary judgment on Interstate's statutory employer defense. Third, and alternatively, plaintiffs argue that the even if Interstate is their statutory employer, the LWCA is inapplicable because plaintiffs were not in the course and scope of their employment with their injuries occurred. All three arguments fail.

1. *The Hotel Management Agreement*

Plaintiffs argue that because the Hotel Management Agreement does not specifically mention "housekeeping services," the agreement is ambiguous and therefore summary judgment is inappropriate. This argument is meritless. First, the agreement refers to "services that are customarily performed by management companies of first-class, full-service hotels" or "services that are necessary for the day-to-day operation" of a full-service hotel. Housekeeping is obviously a service that is customarily performed in and necessary for the day-to-day operation of a full-service

hotel like the one at issue here, and plaintiffs point to nothing suggesting otherwise.  Further, Bilbe attests, without contradiction, that housekeeping is a service provided by Interstate under its contract.  Moreover, Attachment A to the contract between Interstate and Staff Pro lists the services (and the corresponding positions) that Staff Pro was to provide for Interstate, and includes "turndown" and "houseperson," both of which are related to housekeeping.[27]

In both their opposition to summary judgment and their supplemental response, plaintiffs rely on *Grant v. Sneed*, 155 So. 3d 61 (La. App. 2 Cir. 2014), and *LFI Fort Pierce, Inc. v. Acme Steel Buildings, Inc.*, 200 So. 3d 939 (La. App. 3 Cir. 2016), to argue that summary judgment should be denied.[28] Neither helps plaintiffs' argument.  In *Grant*, the court found the two-contract defense inapplicable because the record was unclear that the principal entered into a contract with a third-party in the first place, a necessary precondition to the two-contract defense.  155 So. 3d at 69-70. There, the only evidence that could be interpreted as a written contract was an unsigned purchase order, which did not specify that work was to be performed under the order.  The court also found that defendant did not

---

[27] R. Doc. 53-1 at 1.
[28] R. Doc. 32 at 9; R. Doc. 51 at 2-3.

meet his burden in proving the existence of a verbal contract. *Id.* Therefore, as relevant here, all *Grant* stands for is the unobjectionable proposition that a principal must have a contract with a third-party in order for the two-contract defense to apply, and that disputed issues of fact as to the existence of such a contract will preclude summary judgment. *Grant* is inapposite here, as there is no dispute that a contract to operate the hotel between Canal Place and Interstate existed, and that work was to be performed under that contract.

*LFI Fort Pierce* is inapplicable as well. There, the court denied summary judgment on the two-contract defense because the first contract between the defendant and the third-party was verbal and ambiguous, and it did not appear that the subsequent subcontract that the defendant entered into covered its obligations under the first contract. 200 So. 3d at 946-47. That is not the case here, where Interstate's contract with Staff Pro clearly indicates that Staff Pro is to provide contract workers for services for the hotel.[29]

Finally, plaintiffs argue that the Hotel Management Agreement is a contract "to provide," as opposed to a contract "to perform," and that

---

[29] R. Doc. 9-1 at 12.

contracts to provide cannot form the basis of a statutory employer defense.[30]

This argument is without merit. First, the clear language of the Hotel Management Agreement indicates that Interstate is not only to "provide" services but also must "perform" them.[31] Second, the sole case relied on by plaintiffs for the distinction between contracts to provide and contracts to perform, *Duvalle v. Lake Kenilworth, Inc.*, 467 So. 2d 850 (La. App. 4 Cir. 1985), addressed the "trade, business or occupation" defense, a separate defense not applicable here. *Id.* at 850; *see also Pierce v. Hobart Corp.*, 70 F.3d 1269, 1995 WL 696863, at *1-2 (5th Cir. 1995).

In sum, the contract at issue here is not ambiguous, and there is no dispute that all of the elements of the two-contract defense are met.

### 2. The Legality of the Contract Between Interstate and Staff Pro

Next, plaintiffs argue that a provision of an attachment to the contract between Interstate and Staff Pro is illegal under Louisiana law and therefore Interstate is not entitled summary judgment.[32] Attachment B to the agreement between Interstate and Staff Pro is an acknowledgement that employees of Staff Pro must sign in order to work at the hotel.[33] It requires

---

[30] R. Doc. 51 at 5.
[31] *See* R. Doc. 50-1 at 12-16; *see also supra* pp. 11-12.
[32] R. Doc. 32 at 9-11.
[33] R. Doc. 9-1 at 23.

13

employees to acknowledge that any workers' compensation they are entitled to will be provided by Staff Pro, not Interstate, and that they will not "receive any employee benefits from [the hotel] or any of its agents or assigns."[34] Further, the attachment requires the employees, "to the fullest extent permitted by law, [to] decline, reject, and waive all rights, if any, to any employee benefits now or hereafter offered by [the hotel] . . . even if [the employee is] determined or adjudged to be a common or statutory law employee of [the hotel]."[35]

In asserting that Attachment B is invalid under Louisiana law, plaintiffs rely on *Prejean v. Maintenance Enterprises, Inc.*, 8 So. 3d 766 (La. App. 4 Cir. 2009). *Prejean* invalidated a provision in a contract between a direct employer and statutory employer that provided that the statutory employer would be liable to pay workers' compensation benefits only if the injured worker's direct employer was unable to meet its obligations. *Id.* at 774-75. In doing so, *Prejean* focused on the "onerous burden" the contract placed on the injured worker. *Id.* *Prejean* also observed that as long as the employers do not impermissibly burden the injured worker, the statutory

---

[34] *Id.*
[35] *Id.*

14

employer and direct employer are free to contract as to "rights of contribution or indemnification." *Id.* at 774.

Interstate argues that the contract between itself and Staff Pro does exactly this, and there is no impermissible burden on any injured worker.[36] In the contract, Staff Pro agrees to indemnify Interstate from any direct claim for workers' compensation by any Staff Pro employees,[37] promises to carry workers' compensation insurance in the amount required by law,[38] and agrees that Staff Pro, not Interstate, will provide injured workers with workers' compensation.[39]

It is true that this allocation of responsibility for workers' compensation benefits between statutory and direct employers is expressly recognized as valid by the LWCA and has consistently been upheld by courts. *See* La. Stat. Ann. §§ 23:1031, 1063 (recognizing validity of contribution and indemnification actions between direct and statutory employers and noting that "nothing in [the LWCA] shall prevent any arrangement between the employers for a different distribution, as between themselves, of the ultimate burden of such payments" to the employee); *see also, e.g.*, *McClain v. Motiva*

---

[36] *See* R. Doc. 9-1 at 13, 17.
[37] *Id.* at 17.
[38] *Id.*
[39] *Id.* at 23.

15

*Enterprises, L.L.C.*, No. 09-5806, 2010 WL 3614310, at *3 (E.D. La. Sept. 8, 2010); *Guillory v. Newpark Env'l Servs., L.L.C.*, No. 12-2169, 2013 WL 5757593, at *4 (E.D. La. Oct. 23, 2013). But Interstate ignores the language in Attachment B, which goes beyond allocating responsibility and requires employees of Staff Pro to waive any rights to workers' compensation against Interstate that they may be entitled to under the LWCA.

The Court finds that Attachment B is problematic under *Prejean* because Interstate is attempting to achieve the benefits of tort immunity without assuming the burdens of workers' compensation liability, or in other words, trying to have its proverbial cake and eat it too. *See Bertholet*, 2010 WL 103871, at *8. But the solution is not to find that Interstate is not entitled to the statutory employer defense, especially when the "basic purpose of Louisiana workers' compensation legislation is to broaden workers' compensation remedies, not narrow them." *Id.* Instead, Attachment B is unenforceable *vis-à-vis* plaintiffs, and as plaintiffs' statutory employer, Interstate therefore may be obligated to pay plaintiffs' workers' compensation benefits. *See* La. Stat. Ann. § 23:1033 ("No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided."). This solution is authorized by the language of the agreement

16

between Interstate and Staff Pro. That agreement contains a severance clause which states that if "any term or provision of this Agreement or the application thereof is deemed invalid or enforceable in its entirety, such term or provision shall be severed from the Agreement and the remaining provisions shall remain in full force and effect."[40] The Agreement incorporates its attachments,[41] thus the offending provision in Attachment B may be severed and declared unenforceable.

As the invalidity of Attachment B does not negate the agreement between Interstate and Staff Pro, or render the two-contract defense inapplicable, *Bertholet*, 2010 WL 103871, at *8; *McClain*, 2010 WL 3614310, at *3, plaintiffs have failed to create a disputed issue of fact as to Interstate's immunity under the two-contract theory of the LWCA.

### 3. *Course and Scope of Employment*

Plaintiffs' final argument against summary judgment repeats the argument they made in their motion to remand that they were not injured in the course and scope of their employment.[42] But they point to no evidence

---

[40] *Id.* at 20 ¶ 15 A.
[41] *Id.* ¶ 15 D. In addition, the offending language in Attachment B itself is limited "to the fullest extent permitted by law." *Id.* at 23.
[42] *Id.* at 11. Because plaintiffs' argument is essentially the same as the one the Court already rejected, the Court need not reexamine the course and scope precedent under Louisiana law. *See* R. Doc. 19 at 13.

tending to suggest that they were not injured in the course and scope of their employment. Unlike plaintiffs, Interstate does submit evidence in support of a finding that plaintiffs were injured in the course and scope of their employment. Bilbe's affidavit attests that when the accident occurred, plaintiffs had not yet clocked out, nor had they turned in their assignments, a requirement before one can finish his or her shift.[43] Additionally, Bilbe attests that plaintiffs were still in their housekeeping uniforms when the accident occurred.[44] Finally, Interstate also points to plaintiff Briceno's answers to Interstate's interrogatories, in which Briceno admits that plaintiffs were injured in the hotel service elevator, and that she entered the elevator right after she finished her shift.[45]

Accordingly, it is undisputed that plaintiffs were injured on the hotel premises, in their uniforms, in a hotel service elevator, shortly after finishing their shifts. And as addressed in the Court's previous order, whether plaintiffs were still on-duty or had just finished their shifts and were off-duty is of no moment, as Louisiana courts consistently hold that employees injured on their employer's premises are covered by the LWCA, even if they have completed their shifts. *See, e.g.*, *Sislo v. New Orleans Center for*

---

[43] R. Doc. 9-1 at 2 ¶ 8.
[44] *Id.*
[45] R. Doc. 37-1 at 2.

*Creative Arts*, 198 So. 3d 1202, 1208 (La. App. 4 Cir. 2016) (noting that it has "long been well settled, . . . that [the LWCA] envision[s] extension of coverage to employees from the time they reach the employer's premises until they depart therefrom") (quoting *Carter v. Lanzetta*, 193 So. 2d 259, 261 (La. 1966)); *Mitchell v. Brookshire Grocery Co.*, 653 So. 2d 202, 204 (La. App. 2 Cir. 1995) ("Even if an employee has finished his day's work and is in the act of leaving, he is entitled to a reasonable period while still on the employer's premises which is regarded as within the course of employment.") (citations omitted); *Bosse v. Westinghouse Electric, Inc.*, 637 So. 2d 1157, 1159-60 (La. App. 4 Cir. 1994) (finding that injuries sustained in elevator accident which occurred approximately 45 minutes before plaintiff's shift started were covered by LWCA); *see also Harris v. Wal-Mart Stores, Inc.*, 205 F.3d 847, 851 (5th Cir. 2000) (finding that injury to off-the-clock employee caused by physical defect in employer's premises covered by LWCA).

Given the lack of evidence to the contrary, there is no dispute of fact that plaintiffs were injured in the course and scope of their employment. Because there is no dispute of fact that the two-contract defense applies and that plaintiffs were injured in the course and scope of their employment, defendant Interstate is entitled summary judgment.

## IV. CONCLUSION

For the foregoing reasons, defendant Interstate's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this __20th__ day of June, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE